UNION TOWEL SUPPLY COMPANY, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY AND CHRISTIAN FEIGENSPAN, A CORPORATION, DEFENDANTS.

Submitted November 20, 1923—Decided January 8, 1924.

1. A property owner, whose approach over the highway to his property is obstructed by the erection of a structure on the sidewalk by an adjoining owner, suffers a specific injury as distinct from the general public, which entitled him to test the legality of a municipal ordinance authorizing the erection of such structure.
2. In a delegation of municipal power the word "regulation" does not connote the power of appropriation or confiscation of individual or property rights; hence a municipal ordinance which grants to a property owner the right to erect and maintain a platform on the public highway in front of his property, cannot be legalized under certain statutory enactments which, in effect, give to the municipality the right to regulate the use of streets and highways.
3. A municipality has no power to authorize the use of streets by private persons, from which neither the city nor the public derives any consideration or benefit, except where such use is temporary, or the power has been specifically delegated by the legislature.

On *certiorari* removing ordinance of Jersey City.

For the prosecutor, *George L. Record.*

For Christian Feigenspan, *Porter, Zink & Lafferty.*

For Jersey City, *Thomas J. Brogan.*

Argued by consent before

MINTURN, J.   The Jersey City commissioners, on October 3d, 1922, passed an ordinance authorizing the Christian Feigenspan Corporation to construct and maintain a platform immediately in front of its ice manufacturing plant on Bishop street.   Prior to the passage of the ordinance, the prosecutor, whose property immediately adjoins that of the Feigenspan Corporation, through his attorney, appeared before the com-

missioners and protested against the passage of the ordinance verbally and in writing.

The platform, about seventy-five feet in length and forty-two inches in height, was constructed, and large cakes of ice were delivered over it to the customers of the Feigenspan Corporation, whose wagons back up to the platform to receive it. The construction extending four feet in width is a substantial structure, whose elevated platform is supported by concrete pillars and is reached by the public wayfarers, in the use of the sidewalk, by climbing steps at either end. About seventy-five per cent. of the ice is delivered over the platform between one A. M. and eight A. M. and the balance between eight A. M. and four P. M. each day during the summer. But during the winter season the deliveries are made between six A. M. and four P. M. During this process of delivery the public traveler would be obliged to cross to the other side of the street, or to traverse the middle of the street as the only alternative to ascending the steps, and wending his way along the ice blocks and the scattered particles of ice distributed over the platform as a necessary incident of the manipulation of the ice in its delivery.

The prosecutor's property consists of a vacant lot fronting one hundred and fifteen feet on Bishop street, and two hundred feet on the other end fronting on Cornelison avenue. Its practical use at present is largely prospective, awaiting the decision of the respondent to use it as a location for its present business, in the event of the respondent's failure to renew its lease at its present location. For over fifty years Bishop street has been used as a public highway to a width of thirty feet from curb to curb, the sidewalk occupying ten feet additional in width, four feet of which is occupied by this structure.

The prosecutor contends that the passage of the ordinance was *ultra vires* the commissioners; that its erection in effect is a public nuisance; that it deprives him of access to his adjoining premises, and finally that its passage was in violation of articles 5 and 14 of the federal constitutional amend-

ments. The contention is emphasized by the defendant company that conceding the existence of these infirmities the prosecutor is in no position as one of the general public to take advantage of them, since his alleged injury is no greater than that suffered by the general traveling public, citing *Tallon* v. *Hoboken,* 60 *N. J. L.* 212. The case cited may be differentiated from the case at bar in the fact that the former dealt with the operation of a railroad upon a public street, under a dedication specifically reserving a railroad right of way on the street upon which the prosecutor's lot abutted, together with many other lots, the owners of which with one exception, raised no objection to the operation of the road. The power being conceded by the terms of the dedication and the grant, the abutting owners were held to have accepted their grants *cum onere,* and it was held that the prosecutor's property interests were not specially affected so as to entitle him as distinct from the general public to contest the legality of the ordinance by *certiorari.* In the case *sub judice,* however, the prosecutor's claim to relief is distinctively that of a specially injured property owner. in that the approach to his property over the highway, is by this construction made *pro tanto* more difficult and inaccessible, and his lot inferentially less desirable and valuable.

The power to make the concession in question is based upon section 11 of the city charter, viz.: "To regulate the use of streets and public places by foot passengers and vehicles, railways and engines," and section 12, "To regulate or prevent the use of streets for any other purposes than public travel, and to provide for the removal of any encroachment on streets and public places." To these charter provisions is superadded the following provisions of article 22 of the Home Rule act (*Pamph. L.* 1917, *ch.* 152), viz.:

(*C*) "To prescribe the time and the manner in which and the terms upon which corporations or persons shall exercise any privilege granted to them in the use of any avenue, street, highway, alley or public place or in digging up the same for laying down rails, pipes, conduits or any other purpose whatever."

(*D*) "To prevent or regulate the erection or construction of any stoop, step, platform, window, cellar door, area descent into a cellar or basement, bridge, sign, or any post or erection, or any projection or otherwise, in, over or upon any street or avenue, and for the removal of the same at the expense of the owner or occupant of the premises where already erected," and finally section 1, article 14, sub (*a*), viz., "To regulate and control the construction, erection, alteration and repair of buildings and structures of every kind in such municipalities."

It is obvious that the language of the enactments quoted refers to acts of the municipalities of a preventive and regulative character, and are not intended by any ultra liberal construction to confer upon the municipality a power to legislate, which in its effect and operation must *ex necessitate* prove to be destructive of personal and property rights, and therefore violative of the amendments to the federal constitution, to which reference has been made.

The inquiry therefore, results, is the act in question one of regulation, or is it in effect a concession destructive in its consequences of the prosecutor's right of possession and ownership.

In the case to which reference has been made (Fallon *v.* Hoboken), the present Chief Justice specifically notes the distinction, where he states: "The grant of authority by the city to one of those companies to use its streets longitudinally is not a regulating of such streets, but is a conversion of them into a means of transportation, with which the existence of a street has no natural or necessary connection within the purview of the charter," citing *Montgomery* v. *Trenton*, 36 *N. J. L.* 79, and *Davis* v. *Mayor of New York*, 14 *N. Y.* 506. To hold otherwise, says the learned Chief Justice, the city "by virtue of this provision of its charter has the power to divest the public of the use not only of the streets mentioned in the ordinance under review, but also of every other street within its boundaries, and to devote them exclusively to railroad uses. * * * To justify the conclusion that the legislature intended to grant to a municipality power to deprive the

public *either wholly or partially of its accustomed use* of the city streets, and to appropriate them to private uses, of a railroad corporation, such intention should appear so plainly as to be beyond doubt. The fact that it does not so appear should be decisive that the power does not exist."

The word "regulation" in a delegation of municipal power, such as that before us, does not connote the power of appropriation or confiscation of individual or property rights. Its use in legislation is based upon the implication that the subject-matter upon which the power is to be exercised is legally existent, and is not intended to be the product of unregulated municipal will to be exercised regardless of fundamental rights. If the subject-matter over which the power of regulation is to be exercised has not been legally delegated to the municipal body, or cannot be legally delegated in the light of fundamental, individual and public rights protected by the organic law, the power of regulation thus delegated cannot be invoked as a means in the first instance for creating the non-existent right, for regulation implies *ex necessitate* the legal existence of the subject-matter upon which the power may be exercised.

This principle is manifest from all our cases dealing with the subject. *Fogg* v. *Ocean City,* 74 *N. J. L.* 362; *Traphagen* v. *Jersey City,* 52 *Id.* 65; *Montgomery* v. *Trenton,* 36 *Id.* 79; *Domestic Telegraph Co.* v. *Newark,* 49 *Id.* 344; *McDonald* v. *Newark,* 42 *N. J. Eq.* 136; *Beecher* v. *Newark,* 64 *N. J. L.* 475; *Swift* v. *Delaware, Lackawanna and Western Railroad Co.,* 66 *N. J. Eq.* 34; *Barnes* v. *Essex County Park Com.,* 85 *N. J. L.* 70.

As was stated in *Interstate Commerce Commission* v. *Cincinnatti, &c., Railroad Co.,* 167 *U. S.* 479, "this power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation." The depriving of the public, as is done in this instance, of the right to traverse the city streets to their full width, except for necessitous temporary private exigencies, is an invasion of the right of free unobstructed public travel, which municipal corporations were impliedly created to preserve, rather than to obstruct, as well as for

the convenience of abutting owners, for, as was stated by Vice Chancellor Pitney, in *Methodist Church* v. *Pennsylvania Railroad Co.,* 48 *N. J. Eq.* 454, "a right of way is property, and as such protected by the constitution."

And such abutting owner adjoining the nuisance so created it must be judicially noticed, is specially affected by the particular detriment to which his property may thus be subjected as distinguished from the general traveling public, whose specific loss consists only in the inconvenience resulting from the obstruction of the thoroughfare.

Nor should it be overlooked that the *modus operandi* of the power to regulate consists not in the arbitrary selection of particular individuals or properties for specific adjustment or treatment, in view of their peculiar business requirements, but in the application by ordinance, of a general or universal rule of conduct applicable to all alike within the municipal jurisdiction, and to which all may resort or conform when the necessity may present itself.  2 *Bouv.* 862.

And so, the rule is settled as a cardinal doctrine of municipal law, that except where the use is temporary, or the power has been specifically delegated by the legislature, a municipality has no power to authorize the use of streets for private purposes, from which neither the city nor the public derives any consideration or benefit, such as the construction of a private railroad, or the construction of a tunnel or bridge, or the privilege of constructing a building so as to encroach on the street, or the construction of stands or booths for private business purposes, and other like uses, sufficiently generic in character to be comprehended within the general rule of law applicable to such a situation.  *Atwater* v. *Newark,* 7 *N. J. L. J.* 176; *McDonald* v. *Newark, supra; Camden M. E. Church* v. *Pennsylvania Railroad Co., supra.;* 22 *Cyc.* and cases cited.

These considerations lead to the conclusion that the power thus exercised by the municipal body was *ultra vires* the municipality, and that the ordinance must therefore be set aside, with costs.