ADAMS *v.* COMMISSIONERS OF TRAPPE

[No. 101, October Term, 1953.]

166

*Decided February 12, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles A. Thompson* and *V. Calvin Trice*, with whom were *Harrington & Thompson* on the brief, for the appellant.

*T. Hughlett Henry, Jr.*, with whom were *T. Hughlett Henry* and *William H. Adkins, II*, on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Charles B. Adams, appellant, operates a store in Trappe, a town with a population of about 300 in Talbot County. On February 2, 1953, he applied to the Commissioners of Trappe, a municipal corporation, for a permit to erect a gasoline pump on the sidewalk and a gasoline storage tank under the street in front of his store at the intersection of Main and East Streets. On February 9 the Commissioners denied his application. In spite of the refusal, appellant on March 26 erected a gasoline pump on the sidewalk at the edge of the curb and dug up the street and buried a storage tank under the surface of the street. The tank is 10 feet long and 4 feet in diameter, and has a capacity of 550 gallons. The Commissioners requested him to remove the pump and tank, and upon his refusal to do so, they instituted suit in the Circuit Court for Talbot County for a mandatory injunction to compel him to remove them.

The Commissioners produced evidence to show that appellant had acted in violation of a municipal ordinance, which has been in effect since its adoption on January 3, 1928, providing that it shall be unlawful for any person to construct, erect, alter or improve any building, gasoline pump, or filling station, or other structure within the town of Trappe, without first obtaining a permit from the Commissioners of Trappe. The ordinance provides that any person violating it shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine not exceeding the sum of $50. The Commissioners prayed for an injunction on the ground that it is their duty to maintain the streets and sidewalks in a safe and usable condition and free of obstructions, and to protect the health, safety, and welfare of the citizens of the town. The Commissioners

swore that the gasoline pump obstructs the vision of motorists driving at the intersection of Main and East Streets, and that the storage tank, which appellant buried two feet below the surface of the street, is a fire hazard, and therefore the pump and tank constitute a menace.

Appellant did not contest the power of the municipal corporation to regulate the erection of gasoline pumps and storage tanks. In fact, the chancellor stated that at the argument on the demurrer to the bill of complaint, appellant conceded the validity of the ordinance. His principal defense was that while a court of equity will issue an injunction to remove a substantial obstruction from a street, it will not interpose its aid to remove a slight encroachment which does not interfere materially with traffic on the street.

The chancellor, finding that the pump and storage tank were unlawful encroachments on the public sidewalk and street, entered a decree enjoining appellant to remove them and to restore the sidewalk and street to the condition they were in before the pump and tank were installed. The appeal is from that decree.

It may be stated as a general rule that, with the exceptions of (1) the use of a street by the municipality itself for public purposes, such as sewers, drains, water pipes, etc., and (2) the use by franchise-holding corporations, such as street railways and gas and electric companies, no person, whether an abutting property owner or not, can permanently encroach on a street for a private use, and all such encroachments are nuisances, as least until a permit has been granted and the municipality has the power to permit the encroachment. *Huebschmann v. Grand Co.*, 166 Md. 615, 172 A. 227; *Union Towel Supply Co. v. Mayor and Aldermen of Jersey City*, 99 N. J. L. 52, 123 A. 254; *State ex rel. Latta v. City of Marianna*, 183 Ark. 927, 39 S. W. 2d 301; 10 *McQuillin, Municipal Corporations*, 3d Ed., sec. 30.73.

This history of the jurisdiction of the English Courts of Chancery to abate public nuisances has been traced back as far as the reign of Queen Elizabeth I. The

underlying principle governing equitable relief in suits to abate nuisances is that the injury is of such a nature that the complaining party cannot obtain an adequate remedy at law. Thus, in nuisance cases, as in trespass, the equity court will grant an injunction where the injury is irreparable and cannot be adequately compensated in damages, or when full and adequate relief cannot be obtained at law, or when the nuisance goes to the destruction of the property, or when it is necessary to prevent a multiplicity of suits.

Nuisances are classified as public and private. The public nuisance is an injury to the public at large or to all persons who come in contact with it; the private nuisance is an injury to an individual or a limited number of individuals only. Nuisances are also classified as nuisances *per se* and nuisances in fact, or *per accidens*. A nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances regardless of location or surroundings. A nuisance in fact is an act, occupation, or structure, not a nuisance *per se*, but one which becomes a nuisance by reason of the circumstances, location, or surroundings. *Windfall Mfg. Co. v. Patterson*, 148 Ind. 414, 47 N. E. 2; *Cooper v. Whissen*, 95 Ark. 545, 130 S. W. 703; *Denney v. United States*, 10 Cir., 185 F. 2d 108.

The jurisdiction of equity has been invoked to prohibit not only public nuisances, strictly so called, but also purprestures on public property. Lord Coke defined the term "purpresture" as a close or enclosure, that is, when one encroaches or makes that several to himself which ought to be common to many. 2 *Story, Equity Jurisprudence*, 14th Ed., sec. 1248. Today a purpresture is commonly understood to mean an encroachment upon public rights and easements, such as highways, streets, public squares, bridges and other public accommodations.

The general rule is universally accepted that a municipal corporation may invoke the aid of a court of equity to restrain or, remove any unlawful obstruction or encroachment in a street which constitutes either a public

nuisance or an unreasonable interference with the free use of the way by the public. *County Com'rs of Carroll County v. Rickell,* 146 Md. 463, 469, 126 A. 711; *City of New York v. Rice,* 198 N. Y. 124, 91 N. E. 283; *Breisch v. Locust Mountain Coal Co.,* 267 Pa. 546, 110 A. 242, 9 A. L. R. 1330; *Board of Health of Medford Township v. Jennings,* 129 N. J. Eq. 51, 18 A. 2d 62; *Smith v. McDowell,* 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393; *Ackley v. Central States Electric Co.,* 204 Iowa 1246, 214 N. W. 879, 54 A. L. R. 474. The streets of a city or town are held by the municipal corporation in trust for the public, to be used for the purposes of travel and such other uses as customarily pertain thereto. Since the right of the public to use the streets in a proper manner is absolute and paramount, they must be kept free from all nuisances, obstructions and encroachments which destroy or materially impair their use as public highways.

It is a basic principle that courts of equity have jurisdiction over issues of property and the maintenance of civil rights, and do not interpose their aid in matters merely criminal which do not affect any rights of property. That principle, however, does not preclude injunctive relief against the commission of criminal acts which, unless enjoined, would operate to cause an irreparable injury to property or rights of a pecuniary nature. As we stated in *Clark v. Todd,* 192 Md. 487, 492, 64 A. 2d 547, if criminal offenses are primarily essentially an injury to property, preventive relief may be granted by the court of equity within the same limits as where the element of criminality is entirely absent. In such a case, the court does not intervene to prevent the commission of the crime, although that may incidentally result, but to protect individual property from destruction.

It is beyond question that a gasoline supply pump near the curbstone of a city street may constitute a nuisance, and that the municipal corporation may maintain a suit for a mandatory injunction to remove the

nuisance. Some of the Courts have held gasoline pumps to be nuisances *per se*; other Courts have held particular pumps to be nuisances in fact. In an Illinois case, where the City of Chicago had permitted the installation of the two curb gasoline pumps, the Court declared that any purpresture which materially encroaches on a public street and impedes travel is a nuisance *per se* and may be abated, even though it may have been permitted by the City. *People ex rel. Lapice v. Wolper,* 350 Ill. 461, 183 N. E. 451. The Supreme Court of Pennsylvania has ruled that a gasoline filling station becomes a nuisance *per se* when it is conducted in a residential neighborhood. *Pennell v. Kennedy,* 338 Pa. 285, 12 A. 2d 54. On the contrary, it has been held in many cases that a gasoline filling station is not a nuisance *per se*. *Wilson v. Evans Hotel Co.,* 188 Ga. 498, 4 S. E. 2d 155, 124 A. L. R. 373. In an Arkansas case, *Sander v. City of Blytheville,* 164 Ark. 434, 262 S. W. 23, where a gasoline filling station was constructed with every possible safeguard against fire, the Court held that, although the filling station was a purpresture, it was not a public nuisance *per se*. In *Smith v. Standard Oil Co. of New Jersey,* 149 Md. 61, 70, 130 A. 181, the Maryland Court of Appeals held that a gasoline filling station on the corner of Cathedral and Eager Streets in Baltimore would not be a nuisance *per se*. Again, in *Pocomoke City v. Standard Oil Co.,* 162 Md. 368, 159 A. 902, the Court held that the use of property for a filling station did not create a nuisance *per se*. Of course, a clear distinction must be made between the building of a filling station on private property and the unlawful erection of a pump on a sidewalk. An unlawful encroachment in a public street is a public nuisance *per se*.

Appellant strenuously contended that the gasoline pump and storage tank which he installed are not nuisances because the pump does not materially interfere with pedestrians and the storage tank, which is buried underneath the bed of the street, does not interfere with traffic. His contention is not tenable, because it ignores the

ordinance of the town of Trappe which provides that no person shall erect a gasoline pump in the town without first obtaining a permit from the Commissioners. It is uncontradicted that appellant applied to the Commissioners for permission to operate a gasoline pump at the intersection of Main and East Streets, and that they refused to issue him a permit to operate at that location. In defiance of the municipal authorities, he erected the pump on the sidewalk and installed the storage tank under the street. His action constituted an invasion of the public right in the free use of the street. When the free use of any portion of a street is obstructed by a permanent structure for the conduct of a private business, it is no defense that the unobstructed portion of the street is sufficient to accommodate public travel and does not materially endanger travelers in the use of the street, since it is not for the individual to thus limit or abridge the paramount right of the public in the entire street. *McCraney v. City of Leeds,* 239 Ala. 143, 194 So. 151.

*Incorporated Town of Lamoni v. Smith,* 217 Iowa 264, 251 N. W. 706, is somewhat analogous to the case before us. In that case the defendants applied to the town council for a permit to erect two gasoline pumps between the curb and the sidewalk, and the council denied them that privilege. In spite of the refusal, the defendants erected the pumps surreptitiously at night. The defendants were notified to remove them, but they refused, and the town entered suit for an injunction. The defendants admitted that the town could obtain an injunction to keep its streets free from nuisances, but they argued that it was necessary for the town to prove that the pumps were in fact a nuisance. The Court held that the defendants were guilty of encumbering the street, and that the pumps were a nuisance, and that the town was entitled to a mandatory injunction to have the nuisance abated.

The State has the authority to abate nuisances in the exercise of its police power. Under this power, and

subject to constitutional limitations, the Legislature of a State has the authority to declare what shall be deemed nuisances and to provide for their suppression. Of course, the power of the Legislature cannot be made a cloak for confiscation. The Legislature has no power to declare arbitrarily and capriciously any or every act a nuisance. Likewise, the Legislature may delegate to administrative officers the authority to determine whether certain things constitute public nuisances, with the power to abate them, or may declare that to be a nuisance which is detrimental to the health, morals, or welfare of the citizens. The Maryland Legislature has expressly empowered the Commissioners of Trappe to make ordinances to prevent and abate all nuisances. Code P.L.L. 1930, Art. 21, Sec. 546. The Legislature may also confer upon a local board the authority to exercise the police power of the State when, in the judgment of such board, the conditions exist which the Legislature has declared will constitute a nuisance. Where such an agency acts, the only limitation upon its right to exercise the power is that any interference by it with the unrestricted use of private property must be reasonably necessary to the public welfare and consistent with the guarantees of the Constitution.

Since gasoline curb pumps may be public nuisances, it has been held that a municipality may by ordinance declare that all gasoline pumps operated on the sidewalks of the city are obstructions to public travel and public nuisances, and making it a misdemeanor to operate any such pump. *Village of North Adams v. Wertz,* 218 Mich. 507, 188 N. W. 527; *Rowe v. City of Cincinnati,* 117 Ohio St. 382, 159 N. E. 365. Unquestionably the operation of a gasoline curb pump, while convenient for motorists using the public streets, constitutes a private use for the profit of the owner of the business and not a public use. *Rowe v. City of Cincinnati,* 26 Ohio App. 87, 159 N. E. 492. Hence, an abutting owner is not entitled as a matter of right to a permit to install a gasoline pump and tank in a public street. Such a

permit, when granted, authorizes an encroachment upon the street, and is in derogation of the common right of the public to use the street.

In *Bozza v. Board of Com'rs of City of Perth Amboy,* 7 N. J. Misc. 287, 145 A. 233, where an ordinance prohibited gasoline pumps on sidewalks and streets, the Supreme Court of New Jersey emphasized the fact that the municipal authorities should exercise with caution the power to decide when any permits are to be granted, for by its very nature the power implies discretion in the granting authority. The Court remarked that, if the municipality has the discretionary power to grant a permit for the erection of a gasoline station on the sidewalk, it is also invested with the power to have the same removed when in its judgment such a station obstructs the street or causes it to become unsafe for public travel.

It has been held that to engage in any form of business in defiance of laws regulating or prohibiting the business constitutes a nuisance *per se,* and a person so engaging therein may be enjoined from so doing by anyone suffering a special injury thereby. *Puget Sound Traction, Light & Power Co. v. Grassmeyer,* 102 Wash. 482, 173 P. 504; *State v. Lew,* 25 Wash. 2d 854, 172 P. 2d 289, 296. For example, in *Patapsco Electric Co. v. City of Baltimore,* 110 Md. 306, 312, 72 A. 1039, this Court held that the municipality of Baltimore had the right to maintain a suit to enjoin a corporation from using the streets of the city for the transmission of electric light and power, since the corporation had not received the necessary consent from the Mayor and City Council.

We find no reason to reverse the decision of the chancellor in supporting the action of the Commissioners. The pump has been erected in the center of the town only 60 feet from the Post Office. There was evidence that when motor vehicles are parked near the pump, they extend into the street and obstruct visibility of motorists traveling around the intersection. It was esti-

mated that ordinarily upwards of 900 vehicles pass the intersection in one day, and that the traffic is twice as heavy during the corn and wheat seasons when the farmers haul grain to Trappe Landing.  Every intendment is to be made in favor of the lawfulness of the exercise of municipal power in making regulations and in issuing or refusing permits, and it is not the province of the courts, except in clearly arbitrary cases, to interfere with the official exercise of the powers vested in municipalities.

Appellant also made the technical objection that, even though the pump and tank are nuisances, and the Commissioners are entitled to an injunction to abate them, his wife should have been made a party to this proceeding, because the store property is owned, not by him alone, but by him and his wife as tenants by the entireties, and that they own the fee to the center of the street.  Even if the abutting owners do own the fee to the center of the street, it is subservient to the paramount public easement for street purposes.  It is an established law in Maryland that the existence of a public way may be established by evidence of an uninterrupted user by the public for twenty years, the presumption being that such long continued use and enjoyment of such a way by the public had a legal rather than an illegal origin.  *Day v. Allender*, 22 Md. 511; *Thomas v. Ford*, 63 Md. 346, 353.  In the Court below lifelong residents of Trappe testified that the boundary lines of the street had been as they now are for at least 35 years and during that entire time the street had been used by the public.  Accordingly the chancellor determined that the evidence established the fact that a public easement exists over the sidewalk and street.  The Court of Appeals will not reverse a decision of a court of equity upon a finding of facts unless it is clearly apparent that the finding is not supported by the weight of the evidence.  *Berman v. Leckner,* 193 Md. 177, 186, 66 A. 2d 392; *Kolker v. Biggs,* 203 Md. 137, 99 A. 2d 743.  As the sole purpose of this pro-

ceeding is to compel appellant, who placed encumbrances unlawfully in the street, to remove them, it is clear that appellant's wife was not a necessary party to the proceeding.

For the reasons stated the chancellor was justified in granting a mandatory injunction requiring appellant to remove the unlawful encumbrances. The decree will therefore be affirmed.

*Decree affirmed, with costs.*