[Nos. 37157, 37170. En Banc. December 9, 1965.]

BAXTER-WYCKOFF COMPANY, *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*
NETTLETON LUMBER CO., *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.**

*Reported in 408 P.2d 1012.

*A. C. Van Soelen, A. L. Newbould, John P. Harris,* and *Jorgen Bader,* for appellants.

*Evans, McLaren, Lane, Powell & Moss, William T. Jacobson, Wright, Innis, Simon & Todd,* and *Donald A. Schmechel,* for respondents.

DONWORTH, J.—This is a consolidated action in which the plaintiffs (respondents), Baxter-Wyckoff Company and the Nettleton Lumber Company, seek to enjoin the defendant (appellant), City of Seattle, from collecting certain fees charged in connection with street use permits issued to the plaintiffs and covering their private use of Southwest Florida Street.

Plaintiff Baxter-Wyckoff Company is a lessee of the property abutting on both sides of Southwest Florida Street. Plaintiff Nettleton Lumber Company is an abutting owner of the property adjoining the Baxter-Wyckoff property on the east. Southwest Florida Street was dedicated to public use and platted in 1897 on tidelands owned by the state and located outside the city limits, but within 2 miles thereof. It ranges in width from 250 to 450 feet. The area was annexed to the city of West Seattle in 1905, and to the city of Seattle in 1907. Although the street was never opened, in view of its original location and that it was on state tidelands, we held in *Wyckoff v. Seattle,* 60

Wn.2d 100, 371 P.2d 935 (1962), that it did not become vacated by lapse of time under Laws of 1889-1890, ch. 19, § 32.

Virtually all of the street area adjacent to the Baxter-Wyckoff Company's premises is covered with structures and industrial installations comprising a part of the Baxter-Wyckoff wood processing operation. The area devoted to private use by Baxter-Wyckoff under its street use permit comprises approximately 73,000 square feet for which it is charged an annual fee of $2,156.60. The Nettleton Lumber Company, under its street use permit, utilizes 8,000 square feet of the street abutting its property for storage, and 5,000 square feet for structures. For this use it is charged an annual fee of $425.05. The only portion of Southwest Florida Street used for travel is a 20-foot trestle in the northerly portion of the street area, which provides vehicular and pedestrian access to the plaintiffs' plants from Harbor Avenue Southwest.

The plaintiffs have refused to pay the fees charged for the street use permits since 1958, and are challenging the validity thereof in this proceeding.

Fees in connection with such permits were first authorized in 1955 by Seattle city ordinance No. 83818. That ordinance was superseded in 1961 by ordinance No. 90047, but the language authorizing fees remained the same. Section 13 of ordinance No. 90047 provides:

> The Board of Public Works of the City of Seattle is hereby further authorized and directed *to prepare and adopt a schedule of fees applicable to all such permits heretofore or hereafter issued commensurate with the cost of administration, inspection and policing involved in the issuance and continuance of such permits and the use thereby granted,* . . . . (Italics ours.)

Pursuant to this language, the Board of Public Works adopted a fee schedule purportedly commensurate with the cost of administration, inspection, and policing involved in the issuance and continuance of such permits and the use thereby granted.

Under the fee schedule, Baxter-Wyckoff Company's use was classified in category 7 and Nettleton Lumber Company's use in category 12. The schedule provides, with regard to these categories:

| | | Inspection Fee | Mini-mum |
|---|---|---|---|
| 7. | Piers, loading platforms, bridges, scales, overhead hoists, beams & cranes, all buildings in street area, and all building overhangs (c o r n i c e s excepted) in street area *that are under 50 feet in height,* commercial ramps or steps, or any similar installations. | 10¢ per sq. ft. for 1st 1,000 5¢ per sq. ft. for additional | 10.00 |
| 12. | Material storage or any other use not covered in schedule | 5¢ per sq. ft. for 1st 1,000 1¢ per sq. ft. for additional Maximum-$100.00 | 10.00 |

Plaintiffs allege that the fees charged, as applied to them, are invalid because they bear no reasonable relation to the cost of administration, inspection, and policing involved in the issuance and continuance of the plaintiffs' permits and the use thereby granted, and are, in fact, revenue-raising charges. The city denies this and further contends that a municipality has no power to permit the permanent use of a public street for the purpose of conducting a private business thereon.

During the trial, evidence and testimony were introduced regarding the validity of the fees charged by the city and respondents' use of their respective properties. At its conclusion, the court made findings of fact supporting the plaintiffs' contention and concluded that the fees were invalid. It permanently enjoined the city from collecting from plaintiffs the permit fees claimed due but without prejudice, however, to the right of the city to recompute and collect reasonable fees reasonably related to the cost

of administration, inspection and policing required under the ordinances, *supra*. The city appeals.

We think that we need only discuss the city's contention which is stated in its reply brief under the following heading:

> Respondents' Permanent Encroachments Are Inconsistent with the Public's Easement for Travel in Southwest Florida Street.

In support of this proposition, appellant presents, in the next seven pages, its arguments and citations of authorities beginning as follows:

> It must be emphasized that all streets, including Southwest Florida Street, are dedicated for public travel, that this right is paramount and that secondary subordinate uses are permissible only when not inconsistent with the primary purpose of public travel. This concept runs contrary to respondents' apparent contention that they may, as a matter of right, erect permanent structures in Southwest Florida Street . . . but by its very nature permanent occupancy of the street surface is a private use that decreases the effective area available for public travel. McQuillin, Mun. Corp., 3rd Ed., § 30.73, p. 704 states the general rule:
>
> " . . . the general rule is that neither the municipality, the abutting owners, nor third persons can permanently encroach on a street for a private use, and that all such encroachments are nuisances, at least unless a permit has been duly granted and the municipality has power to permit the encroachment."

Appellant has raised a very important issue by its assignments of error and arguments. This primary issue is whether the city may charge fees for permission to occupy a portion of a public street and use it exclusively for the erection and maintenance of permanent buildings and storage area in the operation of a private business. The ordinance involved in this case (No. 90047) provides, in § 13, as follows:

> The Board of Public Works of the City of Seattle is hereby further authorized and directed to prepare and adopt a schedule of fees applicable to all such permits heretofore or hereafter issued commensurate with the

cost of administration, inspection and policing involved in the issuance and continuance of such permits *and the use thereby granted* . . . . (Italics ours.)

The trial court did not strike down the "use thereby granted" provision in the ordinance. Indeed, it recognized that problems of regulation, inspection, and administration may arise according to the use permitted. However, it held that the fees charged these particular respondents were unreasonable, after considering only the factors of administration, inspection, and policing. The reasoning of the trial court (in its oral opinion) appears to be that the use granted can be considered as a factor only if it directly affects the present costs of administration, inspection, and policing, regardless of (1) the relative undesirability of the use, (2) the attendant legal and practical problems that may arise from such use, and (3) the authority of the city to refuse to issue the permit or prohibit the use entirely.

█ The basic rule applicable to this case is that there is no inherent right in a private individual to conduct private business in the public streets. *McGlothern v. Seattle,* 116 Wash. 331, 199 Pac. 457 (1921); *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864 (1920); *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18 (1917); McQuillin, Municipal Corporations § 30.48, p. 639. In *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516 (1917), we said:

The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right. (p. 660)

This rule applies alike to abutting property owners as well as to the individual members of the public who are

not abutting landowners. The rule applies *particularly* to exclusive private use of the street and the construction and maintenance of permanent structures in the streets. *West Seattle v. West Seattle Land & Improvement Co.,* 38 Wash. 359, 80 Pac. 549 (1905); *Adams v. Commissioner's of Town of Trappe,* 204 Md. 165, 102 A.2d 830 (1954); McQuillin, Municipal Corporations § 30.54, p. 647. As the above-cited cases and authority point out, the *lack of right* of the abutting owner to so use the street in front of his property does not depend on his interference with an actual or proposed public use of the street. The abutting owner simply has no legal right to make this kind of use of the dedicated public street unless an ordinance expressly authorizes permits for such use to be issued by the city, even though no member of the public is inconvenienced by the private use.

■ When a municipality does permit a private individual to construct permanent buildings in the street and have exclusive possession of the street surface for a private business use, such permit is so unusual, and beyond the ordinary authority and power of a municipality, that it may not issue such a permit in the absence of special enabling state legislation. McQuillin, Municipal Corporations § 30.73, p. 693, especially pp. 706, 707.

The trial court (in accord with respondents' contention) based its decision that this permit fee was invalid upon the theory that respondents had a right as abutting landowners to use the streets in any fashion which did not interfere with the rights of the public. The court recognized that the major and basic underlying issue in this case was whether the city had the authority to prohibit the use of the street in the manner shown by the record.

■ In our opinion, respondents are incorrect in their position on this point, as was the trial court. The abutting landowner has no right to build permanent structures in the street nor to set up storage yards therein for private business purposes. Assuming that such power exists, the granting of permission to a private person to so use the streets is totally within the discretion of the city.

As pointed out by appellant city, the cases cited by respondents in support of their contention hold only that abutting owners have the rights to ingress and egress, and freedom from interference with enjoyment of the use of their own property, or other rights incidental to the use of their land, including abatement of encroachment by other abutting owners. Not one of these cases supports a claim of right to so encroach on a dedicated public street, regardless of whether or not the public was then using the whole or any part of the right of way, or was inconvenienced by such encroachment.

The recognized text authorities in the field of municipal law state that the rights of abutting property owners are limited to rights of ingress and egress, light, air, water, and certain temporary or nonexclusive uses of the street right of way. See McQuillin, Municipal Corporations § 30.54, pp. 647-656; Antieau, Municipal Corporation Law, §§ 9.12, 9.13, pp. 606, 622.

It seems clear to us, from the foregoing discussion, that the permit granted by the city to respondents in this case was the grant of a mere privilege, and that the use granted could be prohibited by the city absolutely or could be granted upon such terms and conditions as the city may see fit to impose. This is not a mere matter of municipal regulation. The conditions under which such a privilege will be granted by the city is a matter entirely within the discretion of the city council.

■ The courts have never taken it upon themselves to review the appropriateness of imposing conditions on such a privilege nor to substitute their judgment for that of the municipal authorities. In *Allen v. Bellingham,* 95 Wash. 12, 38, 163 Pac. 18 (1917), this court stated, with regard to street use permits for jitney busses:

> But the use to which the appellant purposes putting the streets is not their ordinary or customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed. As to such users, we think the power of the municipality is plenary, in so far as

this particular clause of the statute is concerned. It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely.

This position was upheld by this court in *McGlothern v. Seattle*, 116 Wash. 331, 335, 337, 199 Pac. 457 (1921).

We deem it unnecessary to discuss the trial court's findings of fact that the cost of administration, inspection, and policing of the permits did not justify the fees charged to respondents. These findings are immaterial because they ignore the issues decisive of the case.

█ The trial court erred two ways. First, it failed to consider "the use thereby granted" as a factor apart from its impact on immediate costs of administration and regulation. Second, it failed to recognize that the particular uses involved in this case were privileges, not rights, of abutting landowners. The trial court expressly held the ordinance constitutional, and not violative of respondents' rights. If the ordinance is valid, the rates are valid. They are within the ordinance provisions.

It is perfectly clear from the record, and the law in the area of municipal regulation of street use, that the city is clearly within its rights and authority to charge respondents according to the square footage of street area they are using. This is a regulation of use, not rental of streets. See *Appleton v. City of New York*, 219 N.Y. 150, 114 N.E. 73, 7 A.L.R. 629 (1916). Potential costs to the city for clearing or restoring such areas for public use upon the termination of a permit may well depend on the square footage of the area used and the character of the use granted.

The New York case just cited was relied on by appellant city in its briefs, and quoted at some length. On its facts, that case, of all the cases cited by either party, most nearly resembles the case at bar. We recognize that this court is not bound by it, but we find its reasoning very persuasive. It seems to us that this decision of the highest court of the state of New York merits serious consideration in view of respondents' argument that they are paying to the city "rent" for the use of their own land (the abutting portion

of a dedicated public street) which they claim to have an absolute right to use. So far as we can find, no other state appellate court has equated such fees with "rent," or accepted this argument.

Since, as we have seen, the city has plenary power to refuse to permit any person to build or maintain, in a public street, a permanent structure for use in the conduct of his private business, it follows that the city may charge such fees and impose such other conditions with respect to such use as it deems proper. Consequently, the courts may not enjoin the collection of fees by the city therefor regardless of the amount thereof. Ordinance No. 90047 is admitted to be valid and we are of the opinion that the fees charged respondents for the permits issued thereunder may not be reviewed by the courts.

The judgment of the trial court is reversed with directions to dismiss the case.

HILL, FINLEY, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

HUNTER, J. (dissenting)—The majority goes to great length in stating the rules of law relating to the rights of abutting landowners and, as such, that they have no right to maintain structures in the city streets for private use. I cannot see any materiality or need for this discussion in resolving the issues raised in this appeal.

The plaintiffs concede the city has the power to regulate private use of streets which they abut. There is no room for argument that the city, should it be so disposed, has the power to require the removal of the structures erected and maintained by the plaintiffs in the streets in question. However, the city has not seen fit to pursue such a course but has, instead, permitted the plaintiffs to continue their encroachments by the granting of licenses in the regulation of such use.

The issue raised is thus in sharp focus. Is the fee charged reasonably related to the cost of the regulation of such use, or does it constitute a rental charge for such use for revenue purposes? The city cannot rent the use of its streets in-

consistent with the use for which they have been dedicated, in the absence of enabling legislation. See 10 McQuillin, Municipal Corporations § 30.73, p. 707 (3d ed.), and authorities cited.

The authority for the Board of Public Works to adopt a schedule for the issuance of permits in regulating the use of the city streets of Seattle stems from section 13 of ordinance No. 90047, which provides:

> The Board of Public Works of the City of Seattle is hereby authorized and directed *to prepare and adopt a schedule of fees applicable to all such permits heretofore or hereafter issued commensurate with the cost of administration, inspection and policing involved in the issuance and continuance of such permits and the use thereby granted,* . . . . (Italics mine.)

Pursuant to this language of the ordinance the Board of Public Works adopted a fee schedule (set forth in the majority opinion) purportedly commensurate with the cost of administration, inspection and policing in the issuance and continuance of such permits and the use thereby granted.

The sole issue raised by the city's assignments of error is its disagreement with the trial court's determination that fees in categories 7 and 12 of the fee schedule, as applied to plaintiffs, were not reasonably related to the cost of administration, inspection and policing as required under said ordinance, and therefore were not justified as regulations under the police power.

Where a fee or tax is imposed for regulation, the expense of issuing the license and of supervising or regulating the occupation or privilege is generally the controlling factor in determining its reasonableness. 53 C.J.S. *Licenses* § 19(d). Determination of such expense constituted a factual issue before the trial court. After considering all the evidence and the testimony introduced, the trial court made the following findings of fact:

> XI. The City of Seattle issues between 5,000 and 6,000 street permits and renewal permits each year under the ordinances involved in this action at an average cost of

less than $20.00 per permit. The City of Seattle has elected to classify various types of permits and charges less than the actual cost involved for many of those categories. *With respect to classifications 7 and 12 in said fee schedule the City of Seattle has elected to relate the fees charged these plaintiffs to the total area involved irrespective of the actual costs involved in connection with the issuance and continuance of plaintiffs' permits.*

XII. *As applied to the plaintiffs in this action, the permit fees greatly exceed the cost of administration, inspection and policing in connection with the issuance and continuance of plaintiffs' permits.* Approximately one to two hours of time of City employees was required to make an annual inspection of the plaintiffs' properties and re-issue the permits each year. The cost to the City of Seattle of renewing the permits each year is only a nominal cost and *there is no reasonable relationship between the costs incurred and the fees charged either plaintiff. The fee schedule adopted by the City of Seattle in practice as it applies to the plaintiffs does not carry out the principle of establishing fees to pay the cost of regulation and inspection in accordance with the standards set forth in the ordinances,* but instead the fees charged plaintiffs were fixed on the basis of various other considerations such as deterring construction of permanent improvements in street easements. The fee schedule is also designed to make up a deficit in the cost of issuing certain categories of permits by charging fees in cases of the type involved in this action larger than necessary to defray expenses of regulation. *Thus, as applied to these plaintiffs the permit fees are actually revenue raising charges.* (Italics mine.)

These findings, in my opinion, are amply supported by the record and determinative of the correctness of the trial court's conclusion that the fees charged the plaintiffs for the street use permits, for the years in question, bore no reasonable relationship to the cost of administration, inspection and policing involved in the issuance and continuance of such permits and the use thereby granted, constituting revenue measures under the guise of the police power and therefore were invalid. *Vinup v. Seattle,* 11 Wn.2d 630, 120 P.2d 464 (1941); *Great Northern Ry. v. State,* 300 U.S. 154, 81 L.Ed 573, 57 Sup. Ct. 397, rehearing

denied, 300 U.S. 686, 81 L.Ed. 888, 57 Sup. Ct. 504, followed in *Northern Pac. Ry. v. State,* 184 Wash. 710, 52 P.2d 1279 (1935) and *Chicago, M. St.P. & Pac. R.R. v. State,* 184 Wash. 710, 52 P.2d 1279 (1935); *Seattle v. Proctor,* 183 Wash. 293, 48 P.2d 238 (1935). See, also, 53 C.J.S. *Licenses* § 19(a) notes 83, 84; and § 19(d) notes 10 and 11; 33 Am. Jur. *Licenses* § 41, note 1.

The city argues that the Board of Public Works in fixing the amount of the fees was entitled to consider potential costs which would inhere in removal of the structures and which otherwise would result from interference with city purposes, and reflect such costs in the fees charged. Such costs relate to maintenance and construction and could not be properly considered in computation of the fee. Appropriate indemnity deposits or bonds, which the city is authorized to require under the ordinance, *supra,* afford the city adequate protection against such contingencies.

The judgment of the trial court should be affirmed.

ROSELLINI, C. J., concurs with HUNTER, J.