---

## THE ANN.

*(District Court, D. Maryland. June 6, 1881.)*

1. CONSTITUTIONAL LAW—MARYLAND OYSTER LAW OF 1880—SEIZURE OF VESSEL —NOTICE.

> Under the Maryland oyster law of 1880, an oyster schooner, found dredging in the Chesapeake bay without a license, was seized, and with her master and crew carried into Annapolis by the state oyster police. The master and crew were tried before a justice of the peace and fined, and upon non-payment of the fine the vessel was forfeited and sold.
>
> *Held*, that the forfeiture and sale were valid; that the law was not repugnant to the state constitutional provision that in all criminal prosecutions every man shall be entitled to trial by jury.
>
> *Held*, also, that the law was not repugnant to the provision of the federal constitution that no state shall deprive any person of his property without due process of law.
>
> *Held*, that the seizure of the vessel was notice to the owner, and that, as the law provided for an appeal by the owner from the decree of forfeiture, he could make himself a party to the case and defend his rights.

In Admiralty.

*George W. Wayson*, for libellant.

*Robert H. Smith*, for respondents.

*Att'y Gen. Gwynn*, for the State.

MORRIS, D. J. This controversy was commenced in this court by a libel filed by seamen for wages against the schooner Ann, a small

domestic vessel, of the port of Baltimore. Two different claimants appeared, asserting ownership of the vessel, and several petitioners have appeared claiming to have liens for repairs to the vessel under the state lien law.

The schooner is one of the class of vessels used for dredging oysters in the Chesapeake bay, and on November 10, 1880, the seamen shipped on her as oystermen and sailors for the purpose of taking oysters in the Chesapeake bay—some of them by the month and some by the trip. On the fourteenth of November the master and crew and the schooner were taken into custody by the state oyster police, and carried into Annapolis, charged with dredging for oysters without a license, in violation of the state law. The master and crew were tried before a justice of the peace, found guilty, and fined. At the expiration of 20 days, the fine and costs not having been paid, the vessel, which had been held in custody from the time of seizure, was adjudged forfeited, and the justice ordered that the sheriff of the county should sell her, after having given 20 days' notice.

In pursuance of the decree of the justice the sheriff sold the vessel at public auction, after notice, on December 27th, when she was purchased by the claimant Saunders, to whom she was delivered, and in whose possession she was found by the marshal when taken under the process issued from this court at the instance of the libellants. She is also claimed by Mrs. Alice Thorington, wife of the master in command of her when she started on her dredging trip. Mrs. Thorington held the title to the vessel at that time, and she has filed a petitory libel.

The authority for the proceedings under which the schooner was seized by the oyster police, forfeited, and sold, is the act of the assembly of Maryland of 1880, c. 198, known as the "Oyster Law," and by these libels and petitions in this court it is sought to question the constitutional validity of that law. The Maryland oyster law of 1880, by section 2, provides that no boat shall be used in dredging oysters in the waters of the state of Maryland without first having been licensed, for which a certain rate per ton is to be paid to the state. Section 16 provides that the number of the license shall be displayed on the starboard side of the mainsail, and on the port side of the jib, in black figures 22 inches long. Section 9 makes it the duty of any sheriff, constable, or officer of the state fishing force to arrest any person or persons, and seize any vessel, found violating the provisions of the act, and to bring the offenders before a judge or justice of the

peace. Section 10 provides that the judge or justice of the peace shall either give the case an immediate hearing, or, at the instance of the parties charged, shall appoint a day within the next 10 days to hear the case, and on conviction shall fine the offenders not less than $50 nor more than $300, or sentence them to imprisonment in some house of correction; and that the vessel used in such violation shall be held until said fine and costs are paid, and if the fine and costs are not paid within 20 days, the judge or justice shall decree the vessel forfeited, and shall have authority to order any sheriff or constable to sell her, after giving 20 days' notice; the proceeds to go to the payment of fine and costs, and the balance to the owner of the vessel. It is also provided that the owner, or any person convicted under the act, shall have the right of appeal to the circuit court of the county. The act contains other and different provisions with regard to vessels owned wholly or in part by any non-resident of Maryland.

The first objection urged against this state law is that it is repugnant to the declaration of rights and constitution of Maryland, by which in all criminal prosecutions every man is declared to be entitled to a trial by jury, (article 21,) and by which it is declared (article 23) that no man ought to be taken or imprisoned or deprived of life, liberty, or property but by the judgment of his peers or the law of the land.

This is a question which it is the appropriate duty of the state tribunals to determine. In the recent case of *State* v. *Green*, the Maryland court of appeals, after full argument and careful consideration, sustained the constitutionality of the vagrant act of 1878, against which similar objections had been urged, and decided that these declarations of the bill of rights and constitution of Maryland were merely declaratory of rights long settled among our people by usage and the course of law, and were not intended, and had never been considered as intended, to prohibit the state from providing for the summary trial and imprisonment of vagrant and disorderly characters, or the enforcement by short imprisonments of mere police ordinances.

It is to be noticed in this case that the forfeiture of the vessel was founded, not upon any sentence of imprisonment of the offenders, but upon the non-payment of the fine imposed upon them for violation of a law requiring a license. It is not, therefore, necessary to sustain that part of the law giving jurisdiction to the justice to punish the offenders by imprisonment in order to sustain the validity of the forfeiture of the vessel.

The right of the legislature to give jurisdiction to justices of the peace to impose fines has long been "the law of the land" in Maryland, and it has been held in her appellate court that actions to recover fines are civil actions, although the penalty for non-payment may be imprisonment. *Mace's Case*, 5 Md. 337. The right of all governments, notwithstanding similar constitutional prohibitions against taking property of the citizen "but by the law of the land" or "without due process of law," to proceed by summary process of distress or fines or penalties to enforce payment of revenue, is elaborately discussed and fully sustained by the supreme court in *Murray* v. *Hoboken Land Co.* 18 How. 272.

In advance of such a construction by the state tribunals, I am not at all prepared to hold that the Maryland legislature is prohibited by her constitution from conferring jurisdiction upon justices of the peace to try and fine offenders against her revenue laws, or against her laws for the protection of her fisheries. All possible risk of oppressive abuse would seem to be guarded against in this law of 1880 by the right of appeal to a court sitting with a jury.

The next objection urged against the forfeiture and sale of the vessel, and against the title of the purchaser to whom she was sold and delivered by the sheriff, is that there was no notice given to the owner or other persons having interest in her, and that, therefore, the proceeding as against them was void, as being an attempt of the state to deprive them of their property "without due process of law," contrary to section 1 of the fourteenth amendment of the constitution of the United States.

The act of 1880 provides that the state officers shall seize and take into custody the vessel found violating the provisions of the act, and if, upon trial and conviction, the offenders do not pay the fine imposed upon them within 20 days, then the justice shall direct the vessel to be sold after 20 days' notice.

The supreme court of the United States, in *Smith* v. *Maryland*, 18 How. 75, passed upon the validity of the Maryland oyster law of 1833, by which every vessel employed in catching oysters with a dredge was declared forfeited to the state, with everything on board of her. In that case the vessel belonged to a non-resident of the state, and was condemned by a justice of the peace of Anne Arundel county, and, upon appeal to the circuit court of that county, the judgment had been confirmed. The case, by writ of error to the Anne Arundel county court, was brought before the supreme court, and that court, after sustaining the constitutionality of the state

oyster law of 1833 as not being repugnant to the power of congress to regulate commerce, proceeds to say, (p. 75 :)

"And it is the judgment of this court that it is within the legislative power of the state to intercept the voyage, and inflict the forfeiture of a vessel, for disobedience, by those on board, of the commands of such a law. To inflict a forfeiture of a vessel on account of the misconduct of those on board—treating the thing as liable to forfeiture because the instrument of the offence—is within the established principles of legislation which have been applied by most civilized governments."

In the same case the supreme court also held that the law of 1833 was not repugnant to the provisions of the federal constitution which confers all admiralty and maritime jurisdiction upon the courts of the United States.

It is true that there was no notice, by service or publication of notice, to the owner or holders of maritime or other liens, that the vessel was being proceeded against; but a proceeding *in rem* forms an exception to the general rule of notice, particularly when based upon actual manucaption of the thing which is the instrument of the wrong, and in such cases the *seizure* has been held to be constructive notice to every one having any interest in the thing seized.

The supreme court, in *The Mary*, 9 Cranch, 144, has said:

"The whole world, it is said, are parties in an admiralty cause, and therefore the whole world is bound by the decision. The reason of the *dictum* will determine its extent. Every person may make himself a party, and appeal from the sentence. * * * Where proceedings are against the person, notice is served personally or by publication; where they are *in rem*, notice is served on the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is the part of common prudence for all those who have any interest in the thing to guard that interest by persons who are in a situation to protect it."

But it is also a just qualification of the foregoing rule that, unless the party to be affected with the actual or constructive notice would, if he had appeared, have been allowed to assert his right, and be heard in its defence, the proceeding cannot affect him. *The Mary, supra; Windsor* v. *McVeigh*, 93 U. S. 277; *Bradstreet* v. *Ins. Co.* 3 Sumn. 607; *The Henrietta*, 1 Newb. 292.

In the present case, with regard to the owner of the schooner, the act of 1880 provided that she might have a right of appeal from the decree of forfeiture, and she was thereby given a right to be heard. With regard, however, to any other persons having maritime liens or interest in the vessel, I cannot see that the law made it possible for them in any way to intervene and defend their rights. It is not

necessary, however, in this case that I should determine how far the decree of forfeiture might affect persons, other than the owner, having liens on the vessel, for the reason that I do not find the lien claims in this case are established. In order to entitle the seamen to a maritime lien for their wages they must be innocent of all knowledge of, or participation in, the illegal voyage. *St. Jago de Cuba,* 9 Wheat. 409.

The law required that the vessel should have a license, and that its number should be displayed upon her sails. This law the seamen, as well as others, were bound to know. Not seeing the numbers on the sails, they knew, when they engaged in dredging in the waters of Maryland, that they were engaged in a prohibited employment.

As to the lien claims of the material-men for repairs, I am obliged to hold them all defective for want of compliance with the requirements of the state lien law. The only one which there has been any serious attempt to sustain is that of the Chesapeake Marine Railway, and that fails from not having been filed within the time prescribed by the law.

Libels dismissed, with costs.

END OF CASES IN VOL. 8