BURNS, ᴇᴛ ᴜx. *v.* MAYOR AND CITY COUNCIL
OF MIDLAND, MARYLAND

[No. 531, September Term, 1966.]

*Decided October 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, McWILLIAMS, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Horace P. Whitworth* and *Hugh A. McMullen,* with whom were *Gunter & Geppert* on the brief, for appellants.

*John C. Sullivan* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Allegany County authorizing the Mayor and City Council of Midland, a municipal corporation, to raze a building of the appellants under a town ordinance authorizing the demolition of

any structure found by the town to be dangerous to life or health. The appellants contend that the ordinance is unconstitutional because it does not in terms provide for notice to a property owner of the decision of the municipal corporation to demolish a property, or for an opportunity to be heard. They contend also that the court order was erroneous because there was insufficient evidence that the building involved was dangerous to the public safety.

Midland is an incorporated town of a few thousand people, located in the mountains of western Maryland. The property involved, euphemistically known as the Ward Opera House, is a 75 year old two-story wooden structure. The ordinance in question reads as follows:

> "Whenever any dwelling or any building, structure, excavation, matter, condition or thing in or about a dwelling or the lot on which it is situated, or the plumbing, sewage, drainage, light or ventilation thereof, is found by the Mayor and Council to be dangerous or detrimental to life or health, the Mayor and Council may order that matter, condition or thing, be removed, abated, suspended, altered or otherwise improved, as the order shall specify. If any such order of the Mayor and Council issued under the authority of the provisions of this Section, is not complied with within three (3) days after the service thereof, then such order may be executed by the town of Midland thru its officers, agents, employees or contractors, and the expense incurred incident to the execution of said order shall be paid by the owner of said property, and such expense may be recovered by the Town by appropriate legal action or the Mayor and Council may order such premises vacated until such premises shall be made to comply with the conditions of this ordinance. Before proceeding to execute such order, a copy of such notice shall be sent to the owner of the property, or his agents, if names and addresses on diligent search can be ascertained, and such notice shall be posted on said premises at least three (3) days before the Town proceeds to incur such expense unless

the condition is of such character as to require immediate action, in which case the time of notice shall be such as, in the judgment of the Mayor and Council is reasonable and proper."

The ordinance was passed pursuant to Code (1957) Article 23A, Section 2, which provides:

"The legislative body of every incorporated community in this state shall have the general power to pass such ordinances to protect the health and comfort and convenience of the citizens of the municipality."

It is clear that the appellants, as well as their predecessors in title, had in fact ample notice that the Midland authorities regarded the condition of the Opera House as dangerous and insisted that steps be taken to eliminate the danger.

As far back as 1958, repeated requests had been made by the Midland Mayor and City Council to the then owners of the Opera House for its repair or removal, with little or no result. The communications stated that the building was a fire hazard, was unsafe, dilapidated, and unused and because of the easy access to the interior, presented the constant threat of a serious fire.

Mr. and Mrs. Burns, the appellants, contracted with the Ward heirs to buy the property here involved in January, 1963 and took title in March, 1964. From January, 1963 to December 14, 1965, eleven letters were sent to the appellants by the Midland authorities requesting the Burns to come and discuss the matter with the Council. The appellants appeared on only two occasions; the second occasion was in response to a warrant issued by the Midland Trial Magistrate. At that time Mr. Burns promised to repair the buildings without delay. After the appellants had purchased the property in March, 1964, some repairs were made. In November, 1965 several small boys entered the Opera House, which, except for three months in 1963, had been vacant for many years. The boys set fire to a large feathered chair; fortunately, the blaze was extinguished without serious damage. After this incident, a delegation of the Midland Fire Department appeared at the Midland Council meeting in December, 1965 and demanded that the Council take

immediate action, pointing out that the Opera House was the first of a series of 25 or more old wooden structures on the town's main street.

On December 13, 1965, the Midland Mayor and Council decided to take action for the removal of the unsafe condition which the building presented. The town attorney wrote to the appellants on December 14, notifying them of the town's action and reviewing the previous proceedings. Receipt of this letter was admitted by Mr. Burns. The notice was also published in the Cumberland newspaper on December 21, 1965. On December 23, 1965, no communication from the appellants having been received, a notice was posted on the Opera House stating that necessary action must be taken to remove and abate the dangerous and unsafe condition and that, if the condition was not remedied by January 1, 1966, the Midland Mayor and City Council, under the authority given to them by the ordinance, would take action of removal and charge the cost to the owners. The appellants did not respond in any way to these notices. At its meeting on January 13, 1966, the Council decided to extend bids for the dismantling of the building. Two months later, the Council entered into a contract for the razing of the building, and on March 15, 1966, the contractor began to tear down the structure. The appellants ordered the contractor to cease the demolition operations and all work was immediately stopped by the town authorities. Thereafter, Midland filed a petition in the Circuit Court requiring the appellants to show cause why Midland should not be permitted to demolish the appellants' building. After a full hearing, the lower court passed the order from which this appeal has been taken.

The appellants contend that, even though notice of the proposed action may have been given by Midland and even though there was a full evidentiary court hearing on the validity of the demolition order, the ordinance, nevertheless, violated Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment to the United States Constitution because it did not expressly provide for reasonable notice to the property owners and an opportunity to be heard.

No question is or could properly be raised as to the constitutional right of the Town of Midland under the police power

delegated by the Legislature to enact reasonable regulations for the repair or removal of structures found dangerous to life or health. *Board of Health v. Crew,* 212 Md. 229, 234-35, 129 A. 2d 115 (1957), and cases therein cited. The Mayor and City Council of Midland, an incorporated community, was authorized by the Legislature to pass such an ordinance as the one here involved. Nevertheless, the procedure under such an ordinance, if the enactment is to be valid, must provide for the fundamentals of due process of law.

A basic requirement of due process in any adversary proceeding, whether that proceeding be private litigation or the exercise of governmental power against an individual, is that the person proceeded against be given notice and an adequate opportunity to contest the claim against him. *Travelers v. Nationwide,* 244 Md. 401, 406, 224 A. 2d 285 (1966), and authorities therein cited. These requirements may not be applicable when the necessity for summary action in an emergency situation to protect the public health or safety is clear. *Deems v. M. & C. C. of Balto.,* 80 Md. 164, 30 Atl. 648 (1894) ; see also *Adams v. Commissioners of Trappe,* 204 Md. 165, 173-74, 102 A. 2d 830 (1954) ; *Camara v. Municipal Court,* 387 U. S. 523, 18 L. Ed. 2d 930, 941 (1967) ; and Annot. 14 A.L.R.2d 73, 78 (1950). Absent such an emergency, even though the scope of a legislative enactment is within the police power, action under the enactment is invalid unless the procedure complies with constitutional requirements. *Londoner v. Denver,* 210 U. S. 373 (1908) ; *Camara, supra; Town of Somerset v. Board,* 245 Md. 52, 65-67, 225 A. 2d 294 (1966) ; and cases therein cited.

The ordinance here involved expressly provides that, if the Midland Mayor and City Council find a structure is dangerous and must be removed, notice must be given to the property owner before action is taken to effectuate that decision. In this case, the appellants had repeatedly been notified that action was contemplated by the Midland authorities before the Council meeting of December 13, 1965, and almost three months elapsed from the time the appellants were notified of the town's action until the demolition was begun.

Unlike the provision as to notice, the ordinance does not con-

tain an express requirement that the property owner is to have an opportunity to be heard before action is taken. However, as we read the ordinance, such an opportunity is implied. The authority to the Mayor and City Council, if they find a condition dangerous to life or health, is that they "may order that matter, condition or thing be removed, abated, suspended, altered or otherwise improved, as the order shall specify." This language strongly indicates that the property owner is to be given the opportunity to appear before the town authorities before final action is taken. The finding of the town, as provided by the ordinance, sets forth several alternatives as to removal, alteration or improvement and the final determination of the course to be followed by the town, by almost necessary implication, is only to be made after the property owner has been heard from, if he chooses to appear. Were the construction of the ordinance doubtful on this point, the enactment would be construed so to avoid a conflict with a constitutional provision where, as here, that course is reasonably possible. *Deems v. Western Maryland Ry.*, 247 Md. 95, 113, 231 A. 2d 514 (1967), and cases therein cited.

It is to be noted that, in this case, in giving notice to the appellants of the decision of the Mayor and City Council at the meeting of December 13, 1965, the town attorney stated that the action was for "the removal of the unsafe and dangerous condition that exists." The letter stated that the "situation" could not be tolerated any longer and referred to the past, repeated promises of Mr. Burns to repair the property and his failure to put it in safe condition. The town attorney's letter obviously implied that the town authorities would be glad to meet with the appellants and to be convinced that the appellants would themselves remedy the dangerous condition without the necessity of demolition. We find that the appellants were given a fair opportunity to be heard under what we believe to be the proper construction of the ordinance.

Judge Naughton, in his construction of the ordinance, held that, before the municipal corporation attempted to enforce it, the entire matter should have been referred to the court so as to guard against any arbitrary action and so as to provide the appellants with the opportunity for a public hearing. This Court

has consistently exercised its inherent power to review governmental actions against an individual alleged to be arbitrary or capricious even if there is no express statutory authority for such a review. *Truitt v. Board of Public Works,* 243 Md. 375, 391, 221 A. 2d 370 (1966), and cases therein cited. Whether, in view of the opportunity for a hearing before the Mayor and City Council which, we have held, the ordinance is to be construed as providing, a full judicial hearing is also required is a question which is not before us, for Midland has entered no cross-appeal from the order of the lower court. In any case, the appellants not only were given the opportunity for an administrative hearing; they also had a full judicial hearing before the demolition of their property was effectuated.

We find that the ordinance, as we have construed it, duly provides for notice and hearing and that in its enforcement the appellants have not been deprived of any constitutional right.

The appellants' second contention is that there was not sufficient evidence before the lower court to sustain its finding that their building was in such disrepair or unsafe condition that it constituted a danger to the public. We disagree. There was strong testimony on behalf of Midland, by representatives of both the State and local fire departments, that part of the building's foundation had collapsed, that the clapboard siding had dried out and spread and that because of dilapidation and vacancy, the structure was, in effect, a fire hazard. While in 1964 the appellants had repaired the roof, replacing part of it, and made other replacements, including new window panes, there was persuasive evidence that the building, after the repairs, had again become dilapidated and open to vagrants and the elements. The appellants offered some testimony to the contrary. However, one of the members of Midland's City Council, who has also been a member of the Midland Fire Department for 20 years and its chief for 11 years, testified that he had inspected the building several times. He stated that, in December, 1965 he found the weatherboarding was in such a condition that some of it was falling off, some windows were broken, the first floor sagging, and the building in a bad state of repair.

In his opinion, after the hearing before him, Judge Naughton found as a fact that the Opera House has been occupied for only

556

three months during the past 20 years and that during this three month period only approximately one-fourth of the building was used. This finding is not controverted.

Judge Naughton viewed the property with the consent of all counsel. In the oral argument, the appellants contended that the demolition had been begun before the trial and that, therefore, the judge could not tell what the condition of the property had been before the beginning of the razing. However, the judge was aware of all the circumstances; much of the testimony went to the dilapidated and dangerous condition of the building prior to the passage of the order of the Midland City Council in December, 1965. Judge Naughton found that the "building has been damaged and has deteriorated to such an extent that it is irreparable and can no longer be used and should be razed." The evidence amply sustains his conclusion.

*Order affirmed; costs to be paid by appellants.*