HEBRON SAVINGS BANK *v.* CITY
OF SALISBURY

[No. 7, September Term, 1970.]

*Decided October 19, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Fulton P. Jeffers* and *Hamilton P. Fox,* with whom were *Hearne, Fox & Bailey* on the brief, for appellant.

*Richard M. Pollitt,* with whom were *Walter C. Anderson, City Solicitor,* and *Pollitt, Hughes & Bahen* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Hebron Savings Bank (Hebron) sued the City of Salisbury (the city) to recover damages alleged to have been suffered as a result of the demolition by the city, without giving notice to Hebron, of a residence on which it held a mortgage. Judge Travers held that the ordinance under which the city acted is valid and constitutional, and that since the city had acted in a governmental capacity it enjoyed immunity from suit even if it acted improperly or illegally. We agree with the first holding which is not challenged on appeal (see *Burns v. Midland,* 247 Md. 548, 552-553), but disagree with the second.

The case was briefed and argued here on an agreed statement of facts. James Hurley and Margaret, his wife,

bought an old house on East Church Street in Salisbury in 1963 for $6,000 and spent some $1,500 on non-structural renovations. In March 1966 they borrowed $20,000 from Hebron and secured the loan by a mortgage covering the Church Street property, a vacant lot, and a building on Monticello Avenue. Hebron's appraisers valued the Church Street house and lot at $5,000 and $1,000, respectively, the Monticello Avenue property at $22,000 and the vacant lot at $3,000. In June 1966 the city addressed a letter to the Hurleys that was served on Mrs. Hurley, advising them that the Church Street house was in violation of the city Housing Code and that listed structural defects must be repaired or corrected within sixty days. The letter advised the Hurleys that they could appeal the order to the city Board of Adjustments and Appeals within thirty days.

The city had caused the land records and the tax records to be checked to determine ownership. Although the Hebron mortgage was duly recorded, it was overlooked, and the city was not aware of its existence until claim for damages was made. Mr. Hurley discussed the situation with the director of the city's Bureau of Inspections in the hall of the courthouse and later obtained from him a list of persons who repaired or demolished houses. Several days later, Mr. Hurley asked if the Fire Department would burn the house, and after a visit to the site it was decided that the house was too close to other properties to be burned safely. Thereafter Mr. Hurley appeared at City Hall and advised the Director and a secretary that he was not going to make repairs and desired the city to obtain bids for the demolition of his house. Mr. Hurley admitted these conversations but denied he authorized demolition. The house was demolished by the city in December 1966 without notice to Hebron.

The Monticello Avenue property was released from the mortgage by Hebron prior to the demolition upon receipt of $14,946.83, the proceeds of a private sale. After the demolition the original vacant lot and the newly become vacant lot were sold at foreclosure sale for $2,500 and (ap-

parently) $500, respectively. There remained a principal deficiency of $1,955.56 and a claim to $311.34 interest to November 12, 1969. "The bank did not make any effort to enter a personal judgment against Mr. and Mrs. Hurley [who had separated in the course of the events enumerated earlier] for the deficiency or make any other effort to collect said deficiency from them," and it may reasonably be inferred that this was because there was nothing to collect.

There was testimony from Hebron that the Church Street house was still worth $5,000 when it was torn down and testimony by city inspectors that it was unfit and unsafe for human habitation.

It is agreed that the Charter of Salisbury authorizes the regulation and inspection of buildings and structures and the demolition of them when dangerous or insecure, and provides that the city may "require that such buildings and structures be made safe or taken down." The Charter further provides that in order to preserve "the cleanliness, health, peace and good order of the community * * * and to suppress, abate and discontinue or cause to be suppressed, abated, or discontinued, all nuisances * * * the council may pass all ordinances or bylaws from time to time necessary."

Pursuant to its delegated power, the city enacted a housing code. Article II, § 8A-22 defines an unsafe building ("unsafe, unsanitary, unfit for human inhabitation * * * not provided with adequate egress * * * a fire hazard * * * [or] otherwise dangerous to human life"). Section 8A-23 says: "All unsafe buildings are hereby declared illegal and shall be abated by repair and rehabilitation, or by demolition in accordance with the following procedure." Section 8A-24 provides that when a city building inspector finds any building unsafe he shall give written notice (by registered or certified mail or by personal service) "to the owner, agent or person in control of such building * * * stating the defects thereof." The notice shall require "the owner" within sixty days "either to complete specified repairs or improvements, or to demol-

ish and remove the building * * *." Section 8A-26 gives a right of appeal "except in cases of emergency" to the Board of Adjustments and Appeal "to show cause why [the owner] should not comply with such notice."

The parties differ as to whether Hebron was entitled to notice under the ordinance or as a matter of due process. Article I, § 8A-1 of the Housing Code defines owner as used in the Code as follows: "Owner. Includes his duly authorized agent or attorney, a purchaser, devisee, fiduciary and a person having a vested or contingent interest in the property in question." A mortgagee comes within the definition for several reasons. In Maryland the mortgagor of real estate is regarded as the beneficial owner of the mortgaged property but the mortgage conveys the whole legal estate to the mortgagee, subject generally to the condition subsequent that upon due payment of the mortgage debt and on performance of all the covenants by the mortgagor, the mortgage deed is avoided. *Williams v. Safe Deposit & Trust Co., Trustee,* 167 Md. 499, 504. In addition, an "owner" under the definition of the Housing Code is one "having a vested or contingent interest in the property in question," and clearly this included Hebron. The provisions of the Code as to notice must be deemed to reflect the need to meet the requirements of due process of law in the situations they deal with. See *Burns v. Midland,* cited earlier, where at page 553 of 247 Md. this Court said:

> "The Mayor and City Council of Midland, an incorporated community, was authorized by the Legislature to pass such an ordinance as the one here involved. Nevertheless, the procedure under such an ordinance, if the enactment is to be valid, must provide for the fundamentals of due process of law.
>
> "A basic requirement of due process in any adversary proceeding, whether that proceeding be private litigation or the exercise of governmental power against an individual, is that the person

proceeded against be given notice and an adequate opportunity to contest the claim against him. * * *. These requirements may not be applicable when the necessity for summary action in an emergency situation to protect the public health or safety is clear. * * *. Absent such an emergency, even though the scope of a legislative enactment is within the police power, action under the enactment is invalid unless the procedure complies with constitutional requirements. * * *."

See too *Jarvis v. Baltimore City,* 248 Md. 528.

What then are the consequences of the city's failure to observe the requirements of due process spelled out in its Housing Code?

We think that under the circumstances in this case if the house had any actual value to Hebron as of the time it was torn down, the demolition amounted to a taking of Hebron's property for which the city must pay compensation.

Under the police power the State or its authorized agency or subdivision may prevent an owner of property from using it in a manner that inflicts or threatens public harm or from permitting it to remain in a condition to inflict or threaten such harm. Every individual holds his property subject to this power and the power is fundamental and broad enough to require destruction of the property if this is reasonably necessary to insure the public health or safety. In such case the property is deemed a public nuisance and its destruction falls within the power of the State to abate such a nuisance. *Mugler v. Kansas,* 123 U. S. 623, 31 L. Ed. 205; *Burns v. Midland, supra; Jarvis v. Baltimore City, supra; Board of Health v. Crew,* 212 Md. 229; *The Ann,* 8 F. 923 (D. Md. 1881). But as against the property rights of the owner the power to destroy the property without paying compensation for it depends on the property being in fact a nuisance. Due process of law requires that an owner be entitled to a proper hearing on the question of whether or not the prop-

erty is, or was, in fact and law a nuisance subject to destruction. If it is or was, an owner is not entitled to compensation for its loss. If it is not or was not, he is entitled to compensation. *Jarvis v. Baltimore City, supra.* In *Baltimore City v. Fairfield Imp. Co.*, 87 Md. 352, 362, Judge McSherry for the Court said:

> "That the State may, in the exercise of the police power, and for the preservation of the public health, authorize the summary destruction of private property contaminated with the germs of disease, is thoroughly and definitely settled. * * * But there is a broad distinction between a summary destruction of an offending thing, and a direct injury to unoffending property — that is, property itself not liable to destruction because not dangerous to the public health or safety."

7 McQuillin *Municipal Corporations* § 24.561 at p. 591 (1968 rev. vol.) says:

> "It is a general rule that a municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health * * *."

In the same section at page 597, the author goes on to say:

> "A municipal corporation is liable for the destruction or demolition of a building as a public nuisance, where it is not a nuisance at law or in fact or where the city did not observe due process requirements. Under its police power a city cannot enact an ordinance authorizing building commissioners or other officials to tear down dangerous buildings after notice to the owner, without answering to the owner if a building so destroyed was not in fact dangerous. In other words, the determination of a municipal corpo-

ration that a building is a nuisance is not conclusive, and if it destroys the building the owner may have the question as to its being a nuisance adjudicated in an action against the corporation for damages."

See also helpful discussions of the question in 2 *Nichols on Eminent Domain* § 6.22 (3rd ed. 1963), in which it is said in part: "In all such cases the owner is entitled to a hearing at some stage of the proceedings on the question whether his property was, in fact, a nuisance, and if it was not, he is entitled to compensation for its destruction." In 1 *Nichols, op. cit.* § 1.42 [1], pp. 91-92, the author says:

"Not only is an actual physical appropriation, under an attempted exercise of the police power, in practical effect an exercise of the power of eminent domain, but if regulatory legislation is so unreasonable or arbitrary as virtually to deprive a person of the complete use and enjoyment of his property, it comes within the purview of the law of eminent domain. Such legislation is an invalid exercise of the police power since it is clearly unreasonable and arbitrary. It is invalid as an exercise of the power of eminent domain since no provision is made for compensation."

Judge Markell, for the Court, said in *Capital Transit Co. v. Bosley,* 191 Md. 502, 514:

"The 'police power', at most, is the power of government. Exercise of this power sometimes causes uncompensated expense. But the State itself cannot under the guise of the police power take private property for public use without compensation."

*Board of Regents v. Trustees,* 206 Md. 559, *cert. denied* 350 U. S. 836, held that a statute purporting to authorize

a taking without the payment of just compensation is unconstitutional.

In the article entitled *Municipal Tort Liability in Operation* by A. James Casner and Edgar Fuller in 54 Harv. L. Rev. 437, 443-444, the authors say:

> "Other common-law exceptions to municipal tort immunity are found in cases involving trespasses to real property, nuisances that result in damages to real property, and occasionally when personal property has been converted by a municipality.
>
> "In the trespass and nuisance cases, sovereign immunity conflicts with the rules of the common law that strictly protect privately owned real property from direct physical invasions, and the later consideration is made determinative. Thus, recovery was allowed for damage to property because a nuisance was maintained on a public school ground. Trespass to real estate by water backed up or diverted as a result of municipal interference with the free flow of natural streams has long been actionable. In these cases, the act of the municipality borders on the taking of private property without compensation, an appropriation prohibited by the Federal Constitution [and certainly by the Maryland Constitution, Art. III, § 40]."

This Court has held that the sovereign immunity generally enjoyed by a municipality, *Fowler v. Bd. of Co. Comm'rs,* 230 Md. 504, and *Godwin v. County Comm'rs,* 256 Md. 326, is not a bar to its liability in various situations. See *City of Baltimore v. Landay,* 258 Md. 568, 267 A. 2d 156 (1970).

In *City of Baltimore v. Merryman,* 86 Md. 584, 592, this Court affirmed a judgment of $2,500 against the city for negligently flooding the land of the plaintiff. The Court said:

> "Is it to be said that a municipal corporation

can thus interfere with the rights of others and injure their property, without being liable in damages, merely because it, in constructing its works, is acting under legislative authority? The Legislature has no power to grant such rights to any corporation, public or private. In the familiar case of *Pumpelly v. Canal Company*, 13 Wall. 166, the Supreme Court of the United States, after referring to the doctrine that for a consequential injury to the property of the individual, arising from the prosecution of improvements of roads, streets, rivers and other highways, for the public good, there is no redress, said 'it remains true that when real estate is actually invaded by superinduced additions of water, earth, sand or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle.' So much of the plaintiff's property, therefore, as is covered by the water, would seem to be clearly taken within the meaning of the constitutional prohibition."

The town of Havre de Grace was held liable because in building a yacht basin it caused the dredged material to destroy the shore line of the plaintiff's property and thus negligently inflicted a wrong for which it could not claim governmental immunity. *Havre de Grace v. Maxa*, 177 Md. 168. See *Taylor v. M. & C. C. of Balt.*, 130 Md. 133, in which the city was held liable to those whose property was injured by the maintenance of a nuisance, the municipal sewerage plant. In *Jarvis v. Baltimore City*, *supra*, the city was held liable to the property owner for illegal demolition of his building.

It is our view that Hebron must be given an opportunity to show the court below that the property demol-

ished had value to it and was not a nuisance when it was demolished, and that if it can establish the amount of loss it suffered by reason of the destruction, it must be compensated by the city for that loss.

*Judgment reversed, with costs, and case remanded for the further proceedings indicated.*