767 A.2d 816

**Allen BECKER,**

v.

**STATE of Maryland and Patricia C. Jessamy.**

**No. 111, Sept. Term, 1999.**

Court of Appeals of Maryland.

March 2, 2001.

78

Ira L. Oring (Fedder and Garten Professional Ass'n, on brief), Baltimore, for petitioner.

Andrew H. Baida, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, Patricia C. Jessamy, State's Attorney got Baltimore City, and Ann Refolo and Latonya B. Dargen, Assistant State's Attorneys, on brief), Baltimore, for respondents.

Anne L. Blumeberg, Alan T.L. Sun, Community Law Center Inc., Baltimore, for brief of amicus curiae in support of the respondents.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

Maryland Code (1974, 1996 Repl.Vol., 2000 Supp.), § 14–120 of the Real Property Article authorizes a state's attorney, a county attorney, an affected community association, or a municipality to bring an action in the District Court of Maryland

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

for abatement of a nuisance against a property owner or occupant when real property is used in connection with illegal drug activity. Pursuant to such an action for abatement, the petitioner in this case was ordered to destroy his property. We issued a writ of certiorari to decide whether § 14–120 authorized the court order requiring the owner to demolish the property.

## I.

Petitioner Allen Becker is the owner of record of the corner property located at 2900 Springhill Avenue in a residential area of Baltimore City. Becker conveyed the property to Ulysses Holmes in 1992 pursuant to a land installment contract.[1] The property is a two-story structure. Holmes operated a grocery store on the first floor and resided on the second floor.

In August 1998, the State's Attorney for Baltimore City filed a "Complaint for Abatement of Nuisance and Other Relief" in the District Court, Baltimore City, against Holmes and Becker in connection with the property.[2] The complaint alleged that Holmes and Becker "created a nuisance at the Property by allowing the Property to be used for the purpose of illegally distributing, storing, and administering" controlled dangerous substances. The complaint stated that drug users "frequently gather inside, in front of, on the side of, and in back of the Property for the purpose of purchasing and using

---

**1.** Code, § 10–101(b) of the Real Property Article provides (emphasis added):

 "(b) *Land installment contract.*—"Land installment contract" means a legally binding executory agreement under which:

 (1) The vendor agrees to sell an interest in property to the purchaser and the purchaser agrees to pay the purchase price in five or more subsequent payments exclusive of the down payment, if any; and

 (2) The vendor *retains title* as security for the purchaser's obligation."

**2.** Pursuant to Code, (1974, 1998 Repl.Vol.) § 4–401(7)(ii) of the Courts and Judicial Proceedings Article, the District Court has exclusive original jurisdiction over actions brought under § 14–120 of the Real Property Article.

controlled dangerous substances." The complaint further stated that drug dealers obtain their drugs from "inside or about the Property" and sell the drugs daily in the neighborhood. It was also alleged that drug users loiter on the steps of nearby properties, deposit trash including needles, block traffic, and make noise while waiting to purchase drugs. As a result of the illegal drug activity, the complaint asserted, residents of the community are afraid to leave their homes or park their cars near the property.

The complaint requested the court to declare the property a nuisance, order Holmes to vacate the property, and require Becker to maintain the property so as to abate the nuisance. The complaint also sought an order requiring Becker to submit for court approval a plan to ensure that the property will not again be used for a nuisance and requested "such other and further relief as the nature of the case may require." Upon filing the complaint, notice was duly posted on the property as required by § 14-120(d) which states the following:

"(d) *Posted notices.*—(1) In addition to any service of process required by the Maryland Rules, the plaintiff shall cause to be posted in a conspicuous place on the property no later than 48 hours before the hearing the notice required under paragraph (2) of this subsection.

(2) The notice shall indicate:

(i) The nature of the proceedings;

(ii) The time and place of the hearing; and

(iii) The name and telephone number of the person to contact for additional information."

The trial against Holmes and Becker commenced on February 23, 1999. Five police officers testified to the rampant drug activity at the corner property and nearby area during all hours of the day and night. According to their testimony, drug users went into the grocery store and purchased drugs from employees behind the counter. The police officers described sting operations conducted by the Baltimore City Police Department where individuals came into the store and

requested drugs from undercover officers posing as employees. The police officers also testified that drug dealers used the grocery store as a "habitat," stashing their product in and near the store, including in the door jamb, by the front steps, and in the rear of the property. The officers testified that the grocery store's reputation among drug users and dealers was widespread, attracting drug-related activity from outside areas. Moreover, one neighborhood resident testified that the drug activity at and near the property was just as prevalent at night after the store was closed. In all, according to the testimony, Baltimore City police officers responded to 486 drug-related calls concerning the property and the nearby area between January 1, 1995, and February 18, 1999. Each of the officers testified that closing the grocery store was the only way to stop the drug activity on the property.

The District Court found that the property was a nuisance as defined by § 14–120(a)(4) which provides:

"(4) Nuisance means a property that is used:

(i) By persons who assemble for the specific purpose of illegally administering a controlled dangerous substance;

(ii) For the illegal manufacture, or distribution of:

1. A controlled dangerous substance; or

2. Controlled paraphernalia, as defined in Article 27, § 287(d) of the Code; or

(iii) For the illegal storage or concealment of a controlled dangerous substance in sufficient quantity to reasonably indicate under all the circumstances an intent to manufacture, distribute, or dispense:

1. A controlled dangerous substance; or

2. Controlled paraphernalia, as defined in Article 27, § 287(d) of the Code."

The court stated that "[t]he store at 2900 Springhill Avenue is a convenience store. I am convinced ... its primary convenience is to people who are selling narcotics." The court also found that Holmes had knowledge of the nuisance and that, while there was no evidence that Holmes participated in the illegal drug activity, his acquiescence facilitated the drug

operation in and around the grocery store. Although there was no evidence that Becker had actual knowledge of the illegal drug activity on or near the property, the District Court held that knowledge of the nuisance could be imputed to him from the time the notice was posted in August 1998.

The District Court reviewed the remedies that were available under the statute and stated that, in its view, it could order Becker to raze the property. Subsections (e) and (f) set forth the remedies available in an action brought under § 14–120. Subsection (e), relating to equitable remedies, states as follows:

> "(e) *Jurisdiction.*—The court may issue an injunction or order other equitable relief whether or not an adequate remedy exists at law."

Subsection (f)(1) through (4) sets forth additional remedies as follows:

> "(f) *Remedies.*—(1) Notwithstanding any other provision of law, and in addition to or as a component of any remedy ordered under subsection (e) of this section, the court, after a hearing, may order a tenant who knew or should have known of the existence of the nuisance to vacate the property within 72 hours.
>
> (2) The court, after a hearing, may grant a judgment of restitution or the possession of the property to the owner if:
>
> (i) The owner and tenant are parties to the action; and
>
> (ii) A tenant has failed to obey an order under subsection (e) of this section or paragraph (1) of this subsection.
>
> (3) If the court orders restitution of the possession of the property under paragraph (2) of this subsection, the court shall immediately issue its warrant to the sheriff or constable commanding execution of the warrant within 5 days after issuance of the warrant.
>
> (4) In addition to or as a part of any injunction, restraining order, or other relief ordered, the court may order the owner of the property to submit for court approval a plan of correction to ensure, to the extent reasonably possible, that the property will not again be used for a nuisance if:

(i) The owner is a party to the action; and

( ii) The owner knew or should have known of the existence of the nuisance." [3]

The case was continued until March 1999 in order to permit Becker to prepare and present a corrective plan "to ensure, to the extent reasonably possible, that the property will not again be used for a nuisance." § 14–120(f)(4). The court ordered the grocery store closed pending the March hearing.

At the March hearing, the State offered testimony of another police officer and an individual from the Department of Housing and Community Development. Becker was then allowed to present his corrective plan. He proposed that the grocery store be closed and that the property be rehabilitated into a residence. The court stated that the plan was "too late" and that the court was "convinced that this property is a rabbit warren that exists for the convenience of the drug dealers and not for any legitimate purpose." Accordingly, the court issued an order as follows:

"ORDERED:

1. That the Defendant Ulysses Holmes and all other occupants of the Property vacate the Property by March 11, 1999, and stay out of and away from the Property permanently; and

2. That Defendant Allen Becker shall raze the property by March 31, 1999, at his own expense. Razing shall be done by a contractor licensed to do demolition work in Baltimore City; and

3. The Defendant Allen Becker shall ensure that the demolition contractor or another licensed contractor remove all debris from the demolition site and properly

---

**3.** The entire § 14–120 is directed at "tenants" and "owners." In the District Court, Becker argued that he was not an "owner" within the meaning of the statute. The court, however, rejected this argument and treated Becker as an owner and Holmes as a tenant. The issue has not been raised in this Court; therefore, we express no opinion on the matter.

dispose of it, and that the site shall be properly graded; and

4. That the Defendant Allen Becker shall ensure that the remaining party wall(s) adjacent to the Property are properly repaired by the demolition contractor or by another licensed contractor; and

5. That Defendant Allen Becker shall maintain the vacant lot resulting from the demolition in clean and sanitary condition at all times, free of trash and debris."

Becker noted an appeal to the Circuit Court for Baltimore City and requested that the order of the District Court requiring him to destroy the property be reversed. Holmes did not appeal from the District Court's judgment. On September 2, 1999, the Circuit Court affirmed the order below.[4] Becker filed a petition for a writ of certiorari in this Court presenting two questions, which we have rephrased as follows:

I. Does § 14–120 authorize the District Court to order an owner of real property to destroy it despite the specific remedy set forth by the statute which does not provide for destruction?

II. If the District Court possesses the authority to order the destruction of property, is the order in the instant case erroneous under the circumstances?

We granted the petition and issued a writ of certiorari. *Becker v. State,* 356 Md. 634, 741 A.2d 1095 (1999). We shall reverse the judgments below to the extent that they required Becker to destroy the property. The District Court's order requiring Becker to demolish the property was not authorized by § 14–120 of the Real Property Article. Our holding on the first question makes it unnecessary to reach the second question.

---

**4.** Under § 14–120(*l*) of the Real Property Article (2000 Supp.) and Maryland Rule 7–102(a)(2), an appeal to the Circuit Court shall be heard on the record made in the District Court in an action arising under § 14–120.

## II.

■ The abatement of nuisances is a well-established exercise of governmental authority. Subject to constitutional limitations, the General Assembly "has the authority to declare what shall be deemed nuisances and to provide for their suppression." *Adams v. Commissioners of Trappe*, 204 Md. 165, 173–174, 102 A.2d 830, 836 (1954). *See Hebron Savings Bank v. City of Salisbury*, 259 Md. 294, 300–301, 269 A.2d 597, 600 (1970); *Burns v. Midland*, 247 Md. 548, 552–553, 234 A.2d 162, 165 (1967). The General Assembly has done so here by enacting Ch. 505 of the Acts of 1991, codified as § 14–120 of the Real Property Article, commonly known as the Drug Nuisance Abatement statute. The enactment, according to the title of Ch. 505, was "[f]or the purpose of permitting certain persons to bring an action to abate a nuisance when certain property is used for certain controlled dangerous substance offenses." Originally applying only to residential property, the statute was amended by Ch. 700 of the Acts of 1994 to make it applicable to commercial properties as well.

■ The District Court of Maryland does not have general equity jurisdiction. *See* Code (1974, 1998 Repl.Vol., 2000 Supp.), § 4–402(a) of the Courts & Judicial Proceedings Article; *General Motors v. Schmitz*, 362 Md. 229, 234, 764 A.2d 838 (2001). Rather, the District Court is a court of limited jurisdiction, having only those equitable powers specifically conferred on it by the General Assembly. The petitioner argues that the destruction of property was not an available remedy because it was not one of those enumerated in subsections (e) or (f)(1) through (4) of § 14–120. The petitioner further asserts that the grant of authority to order "equitable relief" in subsection (e) does not extend to the destruction of property. The State, on other hand, argues that the broad language of subsection (e) authorized the District Court's order and that the subsection "does not contain the slightest suggestion that the Legislature intended to divest courts of their well-recognized power to order a nuisance abated by means of destruction." (Respondent's Brief at 9).

We shall assume, *arguendo*, the correctness of the State's position that subsection (e) vests in the District Court the same authority to abate a drug nuisance as a court of general jurisdiction would have to abate a nuisance. Nevertheless, even with this assumption, subsection (e) does not authorize a court to order the destruction of property.

Nuisance abatement statutes have their roots in common law public nuisance abatement principles. The common law authorized civil and criminal actions where there was a "common nuisance" such as a "disorderly house." *See Beard v. State*, 71 Md. 275, 276, 17 A. 1044 (1889). By the later half of the nineteenth century, public nuisance abatement statutes were a common method of combating a range of illegal activity, from the sale of illegal alcohol to prostitution. For a discussion of the development of drug nuisance abatement statutes, *see generally*, B.A. Glesner, *Landlords as Cops: Tort, Nuisance & Forfeiture Standards Imposing Liability on Landlords for Crime on the Premises*, 42 Case W. Res. 679 (1992).

An action to enjoin a nuisance is an equitable one. "The history of the jurisdiction of the English Courts of Chancery to abate public nuisances has been traced back as far as the reign of Queen Elizabeth I." *Adams v. Commissioners of Trappe, supra*, 204 Md. at 169, 102 A.2d at 834. The power of courts to enjoin a party from using his own property to interfere with the rights of others "is not only a well established jurisdiction of the Court of Chancery, but is one of great utility, and which is constantly exercised." *Five Oaks Corp. v. Gathmann*, 190 Md. 348, 353, 58 A.2d 656, 659 (1948). "The underlying principle governing equitable relief in suits to abate nuisances is that the injury is of such a nature that the complaining party cannot obtain an adequate remedy at law. Thus, in nuisance cases, ... the equity court will grant an injunction where the injury is irreparable and cannot be adequately compensated in damages...." *Adams*, 204 Md. at 169–170, 102 A.2d at 834.

 In exercising equitable powers to abate public nuisances, "considerable latitude is permitted to the Courts in dealing with their decrees relative to injunctions." *Bishop Processing Company v. Davis,* 213 Md. 465, 474, 132 A.2d 445, 449 (1957). While courts may have considerable latitude in fashioning injunctive orders to abate nuisances, there are well-established limitations upon this latitude. One general limiting principle is that an injunction abating a nuisance "should go no further than is absolutely necessary to protect the rights of the parties seeking such injunction." *Singer v. James,* 130 Md. 382, 387, 100 A. 642, 643 (1917), and cases there cited. Or, as the Supreme Court of Michigan stated the principle in *Commissioner v. Anderson,* 344 Mich. 90, 95, 73 N.W.2d 280, 282 (1955), "[t]he remedy prescribed should be no greater than is necessary to achieve the desired result ."

In *Five Oaks Corp. v. Gathmann, supra,* 190 Md. 348, 359, 58 A.2d 656, 662, the Court applied this general principle when it struck down those provisions of an order that enjoined the operators of an all night restaurant from playing music after midnight and implemented opening and closing hours, stating that the order "goes further than is justified." The Court noted that it may be possible for the restaurant operators to play music after midnight and otherwise conduct their all night business in a manner that would not disturb the plaintiffs. The Court stated that the "offending party should be allowed to take such measures as in its opinion will reach the desired result" and if such "measures are not adequate or sufficient, further application can be made to the court...." 190 Md. at 360, 58 A.2d at 662.

 In light of the principle that an injunctive order to abate a nuisance should go no further than necessary, and also in light of the constitutional prohibition against taking private property without paying compensation,[5] courts have consis-

---

5. Article III, § 40, of the Maryland Constitution states:
 "**Section 40. Eminent domain.**
 "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed

tently held that destruction of property to abate a nuisance is a drastic remedy and may not be resorted to where the property constitutes a nuisance because of its *use*. If a building is a nuisance, in and of itself, it may be demolished for the purpose of abating the nuisance. *Hebron Savings Bank v. City of Salisbury, supra*, 259 Md. at 300–301, 269 A.2d at 600. "[W]hen the nuisance arises from the improper *use* of a building, the building itself cannot be destroyed, but only the improper use thereof stopped." *Wood's Law of Nuisances*, at 803, 978 (2d ed. 1883). This fundamental principle of nuisance law is reflected in Maryland law as well as in cases in other jurisdictions. *See* Restatement (Second) Torts, § 202, cmt. c (1965, 1977) ("an otherwise unobjectionable building may not be torn down simply because the building happens to be put to a noxious use").

Thus, in *Hebron Savings Bank v. City of Salisbury, supra*, the Maryland opinion principally relied on by the State in the case at bar, this Court pointed out that the governmental authority to abate nuisances is "broad enough to require destruction of the property if this is reasonably necessary to insure the public health or safety." 259 Md. at 300, 269 A.2d at 600. The Court went on, however, to explain that destruction of the property, without paying just compensation to the owner, was permissible only if the property itself was a nuisance. The Court continued (*ibid.*): "But as against the property rights of the owner the power to destroy the property without paying compensation for it depends on the property being in fact a nuisance."

In the *Hebron* case, the building had already been destroyed by the City of Salisbury. This Court remanded the

upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."
Article 24 of the Maryland Declaration of Rights states:
 "**Article 24. Due process.**
 "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

case for a trial to determine if the property itself was a nuisance, and if not, the amount of compensation which the City should pay. The Court further held that governmental immunity "is not a bar to [the City's] liability" in this situation. *Hebron*, 259 Md. at 303, 269 A.2d at 601.

The *Hebron* opinion quoted with approval Chief Judge McSherry's opinion for the Court in *Baltimore City v. Fairfield Improvement Co.*, 87 Md. 352, 362, 39 A. 1081, 1083 (1898), where this Court at an early date drew the distinction between an illegal or harmful *use* of a building and a building which is itself dangerous. The Court in *Fairfield* explained (87 Md. at 362, 39 A. at 1083): "But there is a broad distinction between a summary destruction of an offending thing, and a direct injury to unoffending property—that is, property itself not liable to destruction because not dangerous to the public health or safety."

Therefore, courts may be authorized to order the destruction of property where the nuisance complained of is inherent in, or inextricable from, the property. *See, e.g., Burns v. Midland, supra,* 247 Md. at 555–556, 234 A.2d at 167 (a building that "was in such disrepair or unsafe condition that it constituted a danger to the public" may be destroyed); *Deems v. City of Baltimore,* 80 Md. 164, 174–175, 30 A. 648, 650 (1894) (where spoiled milk threatened the health of the public, a court may "direct that the offending thing shall be destroyed").

■ On the other hand, where the nuisance is in the use of the property, and does not inhere in the property itself, destruction of the property is not an available remedy. *See, e.g., Lawton v. Steele,* 152 U.S. 133, 142, 14 S.Ct. 499, 503, 38 L.Ed. 385, 391 (1894) ("A house may not be torn down because it is put to an illegal use, since it may be as readily used for a lawful purpose"); *Hebron Savings Bank v. City of Salisbury, supra,* 259 Md. 294, 269 A.2d 597; *Ridge v. State,* 206 Ala. 349, 351, 89 So. 742, 744 (1921) (if the nuisance can be abated by eliminating the harmful or illegal use of the property, "the power of the court is limited to the suppression of the nui-

sance, and does not extend to the ... destruction of property"); *Horne v. City of Cordele*, 140 Ga.App. 127, 129, 230 S.E.2d 333, 335 (1976) ("The destruction of property for aesthetic reasons ... has been held an unconstitutional exercise of the [taking] power. \* \* \* And so is any other exercise of government's power of uncompensated destruction over the property of the citizen which exceeds the immediate necessity of the occasion"); *City of Aurora v. Meyer*, 38 Ill.2d 131, 136, 230 N.E.2d 200, 203 (1967) ("Property may be ordered destroyed under certain conditions but only if the danger cannot be abated in any other way"); *In re Iverson*, 151 Neb. 802, 808–809, 39 N.W.2d 797, 800–801 (1949) (governmental authority to abate hazardous building does not extend to destruction where repairs are practicable); *Ely v. Supervisors of Niagara County*, 36 N.Y. 297, 300 (1867) ("A house kept as a house of ill fame and as a resort for thieves and other disreputable persons, is a public and common nuisance; but the destruction of the building and its furniture is not necessary to its abatement, and is unlawful"); *State v. McCray*, 48 N.D. 625, 630–631, 186 N.W. 280, 282–283 (1921) (a house maintained as a bawdyhouse is only harmful because of its use, and, therefore, destruction is not an available remedy). *See also Leet v. Montgomery County*, 264 Md. 606, 611–616, 287 A.2d 491, 494–497 (1972).

Consequently, even if the District Court's authority to abate a drug-related nuisance under § 14–120(e) of the Real Property Article is as broad as the traditional power of an equity court to abate a nuisance, the District Court's authority would not extend to the destruction of a building which is *used* for unlawful activity. The unlawful activity at which § 14–120 is aimed does not inhere in a building itself. Instead, it is entirely in the *use* of the building and adjacent land. A court's authority to order the destruction of property does not extend to this situation.

Moreover, if we were to construe § 14–120(e) as allowing the destruction of a building without any compensation to the owner, serious questions would be presented

concerning the statute's constitutionality under Article III, § 40, of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights. *See Hebron v. City of Salisbury, supra,* 259 Md. at 300–304, 269 A.2d at 599–602. We have consistently followed "the principle that a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality." *Yangming Transport v. Revon Products,* 311 Md. 496, 509, 536 A.2d 633, 640 (1988). *See, e.g., Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93, 104–105 (1994) ("If a statute is susceptible of two reasonable interpretations, one of which would involve a decision as to its constitutionality, the preferred construction is that which avoids the determination of constitutionality"); *Schochet v. State,* 320 Md. 714, 725, 580 A.2d 176, 181 (1990), and cases there cited.

Finally, Ch. 301 of the Acts of 2000 added a new paragraph to § 14–120(f) which authorizes the demolition of property under limited circumstances. New § 14–120(f)(5) provides as follows:

"(5) If an owner fails to comply with an order to abate a nuisance, after a hearing the court may, in addition to any other relief granted, order that the property be demolished if the property is unfit for habitation and the estimated cost of rehabilitation significantly exceeds the estimated market value of the property after rehabilitation."

As new § 14–120(f)(5) was enacted after the present case arose, it is inapplicable to this case. Accordingly, no issue is now before us regarding the scope or validity of new paragraph (5). Nonetheless, if the General Assembly intended that subsection (e) would authorize the demolition of property, there would have been no reason to enact new subsection (f)(5). Under the State's interpretation of subsection (e), subsection (f)(5) would be superfluous. *See Mid-Atlantic v. Public Service Commission,* 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000) ("whenever possible, [a] statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory").

In sum, § 14–120 of the Real Property Article did not authorize the District Court's order requiring the destruction of the petitioner's property.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED AND CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO RE-VERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND REMAND THE CASE TO THE DIS-TRICT COURT FOR FURTHER PROCEEDINGS NOT IN-CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE CIRCUIT COURT TO BE PAID BY THE RESPONDENTS.*